UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA STEPHANS,

    Plaintiff,

v.

CSX TRANSPORTATION, INC. and
NORFOLK SOUTHERN RAILWAY
COMPANY,

    Defendants.
_____/

Case No. 1:08-cv-468

HON. JANET T. NEFF

## OPINION

This case involves a claim under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq*. Plaintiff, an employee of defendant CSX Transportation, Inc. (CSX), filed this action seeking damages for a knee injury she sustained on May 13, 2006, during an attempted coupling of two railroad cars in a railroad yard owned and operated by defendant Norfolk Southern Railway Company (NSRC). Pending before the Court are plaintiff's motions for partial summary judgment against each defendant on the issue of liability. For the reasons that follow, the Court denies plaintiff's motion as to NSRC but grants the motion as to CSX.

### I. Background

Plaintiff's complaint alleges three counts: Count 1—FELA claim; Count 2—Federal Safety Statutes and Regulations claim; and Count 3—Common Law Negligence (in the alternative, and against NSRC only). According to the Complaint, at the time of her injury, plaintiff was employed by CSX and was assigned to pick up and move rail cars from the Hughart Yard, which was owned,

operated, and maintained by NSRC (Compl. Ct. 1 ¶¶ 12-14). Plaintiff was performing a "joint operational railroad activity on behalf of the CSXT[1] and the NSRC," which required coupling a CSX locomotive to an NSRC gondola[2] car and moving the gondola out of the yard (*id.* ¶¶ 15-16). The gondola had been left on a curved section of track by an NSRC train crew (*id.* ¶ 17). An attempt was made to couple the locomotive and car, but they did not couple on impact, after which plaintiff attempted to adjust the locomotive drawbar so that coupling would occur on impact (*id.* ¶¶ 18-19). The drawbar did not move or operate as intended, causing plaintiff's injury (*id.* ¶¶ 20, 22-23).

Plaintiff alleges numerous violations by CSX and NSRC as the basis for liability under the FELA, including, among other allegations, failing to (1) provide plaintiff with a reasonably safe place to work, (2) require that rail cars be properly positioned on straight track for coupling, (3) provide a locomotive that was free of conditions that endangered the safety of switching crews and was safe to operate, (4) provide a locomotive that had an operable drawbar, and (5) inspect and maintain the locomotive in proper operating condition (Compl. Ct. 1, ¶ 30). Plaintiff further alleges violations of safety provisions of the Federal Locomotive Inspection Act (FLIA),[3] 49 U.S.C. § 20701 *et seq.*; the Federal Safety Appliance Act (FSAA), 49 U.S.C. § 20301 *et seq.*; and/or the Code of Federal Regulations (CFR), which plaintiff asserts constitutes negligence *per se* under the FELA (Compl. Ct. 2, ¶ 41). Plaintiff alleges common law negligence against NSRC on various grounds,

---

[1] CSX is referred to as "CSXT" in the Complaint.

[2] "A gondola car is a variety of railroad car with an open top." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 340 n.1 (6th Cir. 2002).

[3] These provisions are sometimes referred to, especially in their former version, as the Boiler Inspection Act. 30 C.J.S. *Employers' Liability* § 106 n.1.

including that NSRC was negligent in leaving a railroad car scheduled for coupling on a curved section of track (Compl. Ct. 3, ¶ 24).

Plaintiff has moved for partial summary judgment with respect to the liability of CSX based on violations of the FLIA, the FSAA, and CFR provisions (Dkt 35)[4] and with respect to the negligence of NSRC (Dkt 36). Defendants CSX and NSRC have each filed a Response (respectively, Dkts 37, 38). Plaintiff has filed a Reply to each defendant's Response (Dkts 39, 40). The Court heard argument on the motions in conjunction with the Final Pretrial Conference.

## II. Legal Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The Court must construe the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Nickels v. Grand Trunk W. R.R., Inc.,* 560 F.3d 426, 429 (6th Cir. 2009); *Hardyman v. Norfolk & W. Ry. Co.,* 243 F.3d 255, 258 (6th Cir. 2001). The party moving for summary judgment has the burden of showing the absence of evidence in support of some essential element of the opponent's case, on which the opposing party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.*

---

[4] Plaintiff has not moved for summary judgment of her remaining negligence claims against CSX under the FELA, and instead states that she will allow the trier of fact to decide those claims.

However, where the party moving for summary judgment has the burden of proof at trial—the plaintiff on a claim for relief or the defendant on an affirmative defense—the movant faces a substantially higher hurdle. *Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1056 (6th Cir. 2001). As explained in *Arnett*:

> "To defeat [a] plaintiff's claim on a motion for summary judgment, however, a substantially higher hurdle must be surpassed, particularly where, as is the case here, the moving party bears the ultimate burden of persuasion on this issue at trial." *Id.* (*citing* 11 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)) (if the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.").

*Arnett,* 281 F.3d at 561. Thus, "'[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.'" *Id.* (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)).

### III. FELA Liability

The FELA was enacted to provide a remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or coworkers. *Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 561 (1987). "The FELA makes a railroad liable to its employees injured 'by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.'"[5] *Nickels,* 560 F.3d at 429

---

[5] Section 51 of the FELA provides: "Every common carrier by railroad while engaging in commerce between any of the several States … shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce … resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

4

(quoting 45 U.S.C. § 51). "A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases." *Buell,* 480 U.S. at 561.

In general, "a FELA plaintiff asserting a cause of negligence against its employer 'must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Hardyman,* 243 F.3d at 258 (citations omitted). A railroad's duty under the FELA is to provide a reasonably safe place to work. *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th Cir. 1990) "The test is whether the railroad, by failing to exercise reasonable care, participated in a manner to effect or permit an unsafe condition." *Hylinger v. Union Pacific R.R.,* 538 F. Supp. 2d 1325, 1333 (W.D. Wash. 2008).

The elements of a FELA claim are (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act. *Hardyman,* 243 F.3d at 258-59. "The Act requires a railroad company to provide its workers with a 'reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under the circumstances.'" *Borger v. CSX Transp., Inc.,* 571 F.3d 559, 563 (6th Cir. 2009) (citations omitted).

Plaintiff asserts she is entitled to summary judgment specifically on her claims under the FSAA, the FLIA, and the CFR. Unlike the FELA, safety statutes impose strict liability upon a railroad—absolute and mandatory duties to keep certain equipment in the prescribed condition. *See*

*Ehmann v. Norfolk S. Corp.,* 241 F.3d 791, 793 (6th Cir. 2001); *see also* 11 AM. JUR. TRIALS 397 § 5 (Westlaw Cum. Supp. 2009). As the Court of Appeals explained in *Borger*, 571 F.3d at 563:

> A plaintiff may demonstrate liability as a matter of law if he proves that a railroad company violated a safety statute that establishes an absolute duty on the railroad company. If a plaintiff cannot point to a specific safety statute that the railroad violated, he can still prevail by proving the "traditional common law elements of negligence: duty, breach, foreseeability, and causation."

(Citations omitted.)

"The FSAA imposes an absolute duty on railroads to provide and maintain certain safety appliances …." *Richards v. Consol. Rail Corp.,* 330 F.3d 428, 432 (6th Cir. 2003). Thus, proving a violation of the FSAA eliminates the need for an employee to prove negligence. To recover for a violation of the FSAA, a plaintiff need "only show (1) the statute was violated; and (2) [she] suffered injuries 'resulting in whole or in part' from the defective equipment." *Id.* (quoting *Coray v. S. Pac. Co.,* 335 U.S. 520, 524 (1949)).[6]

The same is true of claims under the FLIA. 11 AM. JUR. TRIALS 397 § 5. The FLIA imposes a liability on rail carriers that use a locomotive whose parts and appurtenances are not in proper condition. 30 C.J.S. *Employers' Liability* § 106. The Act imposes "an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate without unnecessary peril to life or limb." *Id.* An employer's liability under the FLIA does not depend on negligence. *Id.*

---

[6] A relaxed causation standard applies in FELA cases. The question is "'simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *Richards,* 330 F.3d at 433 (quoting the landmark decision in *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500 (1957)). This standard also applies to FSAA and FLIA claims. *Id.* at 433 n.2.

Although the statutes themselves do not create a cause of action for employees injured by reason of a statutory violation, they do provide the measure of a carrier's duty. 11 AM. JUR. TRIALS 397 § 5. In the case of railroad employees, the right of action is found in the FELA, and the FSAA and the FLIA are effectively considered amendments to the FELA. *Id.*; *see also* 30 C.J.S. *Employers' Liability* § 106. Thus, the plaintiff has the benefit of the ordinary provisions of the FELA with regard to jurisdiction, venue, nonremovability, abolition of assumption of risk, and the like, with two additional, important advantages: (1) contributory negligence, which appliess only to reduce damages in an ordinary FELA case, is no defense at all if a violation of FSAA or the FLIA is proved; and, as noted above, (2) the plaintiff need not prove negligence. 11 AM. JUR. TRIALS 397 § 5.

## IV. Material Facts

The parties have each provided a statement of material facts. The underlying circumstances of plaintiff's injury are not contested. On May 13, 2006, plaintiff was working as part of a two-person CSX crew performing switching activities in the Hughart Yard, owned and operated by NSRC (Pl. SMF/Defs. Resp., ¶¶ 5-6, 8). Plaintiff was the brakeman and Patrick Kloostra was the foreman (*id.* ¶ 8). Plaintiff and Kloostra were assigned to pick up rail cars on track 8 and track 10 (*id.* ¶ 11). They proceeded with CSX locomotive 2669 to track 8 and attempted to couple with the lead rail car, gondola car 588028, which was on a curve (*id.* ¶¶ 12-13, 24, 27).

According to the testimony of plaintiff and Kloostra, which is uncontroverted, they attempted to couple engine 2669 with the gondola car by ensuring that the coupler on the engine was aligned with the coupler on the gondola car so that they would automatically couple on impact; however, the coupling failed (*id.* ¶ 15, 28). Because the knuckles butted during the attempted coupling, the

7

drawbars slewed to the side (*id.* ¶ 29). Before a second attempt to couple the engine and gondola, Kloostra opened the knuckle on the engine and the knuckle on the gondola, and again moved the drawbar on the engine to align the couplers to couple on impact (*id.* ¶ 16, 30). The engine and gondola again failed to couple on impact (*id.* ¶¶ 16, 34). After the second failed attempt to couple the engine and gondola car, Kloostra attempted to move the drawbar on engine 2669 further in its housing to realign the engine coupler with the gondola coupler, but he was able to move the drawbar only four to five inches, which was insufficient (*id.* ¶ 17, 35-37). Plaintiff then attempted to move the engine drawbar by placing her back against the drawbar and pushing; her knee buckled resulting in her injury (a torn ACL) (*id.* ¶ 18, 38-39).[7]

In order to make the coupling, Kloostra moved engine 2669 to track 10 and coupled with an auto parts rail car with a longer drawbar, which he was able to align with the gondola car coupler to accomplish a coupling on impact (*id.* ¶ 19). Plaintiff and Kloostra were able to successfully couple the engine and gondola car once the gondola was moved to straight track (*id.* ¶ 40).

V. Motion for Partial Summary Judgment—NSRC

Plaintiff's claim against NSRC is based on alleged violations of the FELA and the safety statutes, and common law negligence. Plaintiff argues that she is entitled to judgment as a matter of law on the issue of NSRC's negligence because the evidence is undisputed that (1) railcar CR 588028 was parked by defendant on a curved section of track at the Hughart Yard, and (2) the practice of leaving a railcar on a curved section of track is an unsafe practice and constitutes negligence (NSRC Mot. ¶ 4).

---

[7] Although plaintiff did not complain of an injury at the time, defendants conceded at oral argument that they do not contest causation, i.e., that plaintiff injured her knee during the attempt to align the drawbar.

Plaintiff cites the deposition testimony of Kloostra and CSX trainmasters Donald Grupa and Brett Workman, in asserting that the undisputed evidence establishes beyond any doubt that NSRC was negligent for leaving railcar CR 588028 parked on a curve in the Hughart Yard. Plaintiff also cites Workman's testimony that David Arnovitz, the NSRC trainmaster on duty at the time of plaintiff's injury, implied in statements to Workman that leaving the railcar on curved track was an unsafe practice and would be corrected.

Plaintiff asserts that this evidence is uncontradicted and undisputed. However, NSRC points out in response that plaintiff's evidence consists exclusively of the deposition testimony of CSX employees and does not establish that CSX safety standards apply to NSRC or NSRC's Hughart Yard. Moreover, NSRC submits an affidavit from Arnovitz in which he denies that NSRC has any policy or safety rule that restricts or otherwise prohibits the placement of railcars on a curve or the coupling of railcars on a curve (Arnovitz Aff., ¶¶ 8-10, NSRC Ex. C). Arnovitz also states that he is unaware of any other rule or regulation in place in May 2006 that prohibited such practices (*id.* ¶ 9).

Arnovitz further avers that NSRC permits the coupling of railcars on a curve, as indicated by NSRC instruction bulletin DB-116-5, in effect on May 13, 2006 (Arnovitz Aff. ¶ 14), and that such coupling was an almost daily practice at the Hughart Yard (*id.* ¶ 13). NSRC has submitted a copy of DB-116-5, pertaining to the coupling of rail cars located on a curve or in a turnout (Att., Arnovitz Aff.). In further support of its contentions, NSRC cites case law referencing the practice of coupling cars on curves.

The evidence presented by NSRC contradicts plaintiff's evidence that positioning a railcar on a curved track at the Hughart Yard constitutes a safety violation. NSRC's evidence is sufficient

to withstand plaintiff's motion for partial summary judgment. Whether the practice of leaving a railcar on a curved section of track is an unsafe practice and constitutes negligence cannot be decided as a matter of law. Thus, summary judgment on this issue is improper.[8] Plaintiff's motion is therefore denied.

## VI. Motion for Partial Summary Judgment—CSX

With respect to CSX, plaintiff moves for partial summary judgment on her claims of violations of the FLIA, the FSAA and the CFR provisions at issue. The Court finds plaintiff's summary judgment position on these grounds as to CSX far different from the motion as to NSRC. Even considering the substantially higher burden imposed on plaintiff for summary judgment, *Arnett,* 281 F.3d at 561, the Court is persuaded that the evidence supports judgment as a matter of law on the claims of statutory and regulatory violations with respect to the failure to couple, and more specifically, the lack of lateral movement in the drawbar of the engine.

As set forth earlier, safety statutes impose strict liability upon a railroad—absolute and mandatory duties to keep certain equipment in the prescribed condition. *Borger,* 571 F.3d at 563; *Ehmann,* 241 F.3d at 793-96. While the separate statutes and regulations differ in the express duties imposed, each encompasses the failures at issue here, either in terms of malfunctioning equipment or the safety of an employee. The FLIA provides in relevant part:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances–

---

[8] The parties also dispute whether NSRC may be held liable for plaintiff's injuries under the FELA since plaintiff was an employee of CSX, and, therefore, there is a question whether the requisite employment relationship exists for NSRC's liability under the FELA. Because the Court concludes that partial summary judgment is improper with respect to the issue of negligence, the Court need not address this additional argument.

10

> (1) are in proper condition and safe to operate without unnecessary danger of personal injury.

49 U.S.C. § 20701.

> The associated CFR provisions contain related standards:
>
> (a) The Locomotive Inspection Act (45 U.S.C. 22–34) makes it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances--
>
> (1) Are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb.
>
> \* \* \*
>
> All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. …

49 C.F.R. §§ 229.7, 229.45.

> Likewise, the FSAA provides in relevant part:
>
> (a) General.--Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines--
>
> (1) a vehicle only if it is equipped with--
>
> (A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles;

49 U.S.C. § 20302.

Plaintiff contends that the overwhelming facts in this case establish that the drawbar on engine 2669 was not safe to operate at the time of the incident at issue because the drawbar was incapable of being properly and safely moved manually, which was the only method of drawbar movement available to plaintiff and Kloostra at the time. Plaintiff asserts that a post-accident inspection by a CSX machinist and Grupa, established that the only means of safely and properly

moving the drawbar was with a knucklemate,[9] and it is uncontradicted that plaintiff and Kloostra were not provided a knucklemate. Plaintiff contends that the drawbar and engine 2669 were therefore in violation of the FLIA, and 49 C.F.R. §§ 229.7 and 229.45, thus entitling plaintiff to judgment as a matter of law on her claims of violations of these statutory and regulatory provisions.

Plaintiff argues that she is entitled to summary judgment with respect to her FSAA claim since it is undisputed that the drawbar not only failed but was incapable of functioning as intended because it would not move through the full range of motion that would have allowed automatic coupling to occur. Plaintiff asserts that there could not be a clearer example of a "failure to perform" case under the FSAA than a situation of two rail vehicles attempting to couple, repeatedly, and being unable to couple.

CSX responds that, contrary to plaintiff's assertions, the record does not support judgment as a matter of law in plaintiff's favor. CSX contends that plaintiff cannot meet her burden of showing that "the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett,* 281 F.3d at 561. Further, there are genuine issues of material fact concerning the reason for the inability to move the drawbar, which precludes summary judgment. The Court disagrees. The evidence of safety violations and "failure to perform" is compelling with respect to CSX, and, in the context of strict liability under the safety statutes, conclusive on the issue of liability.

---

[9] "The Knucklemate is an innovative tool for the specific use of drawhead alignment. Rick White designed the Knucklemate with guidance from his father, Leonard T White. It was patented in 1991. Leonard worked with CSX until his retirement. During his years of railroad service he underwent two back surgeries. He recognized the need for an easier and safer way to re-align the train drawheads. This tool was especially made for the purpose of making the difficult task of manually aligning mismatched drawheads less strenuous." http://www.knucklemate.com

Plaintiff contends that liability for her injuries rests with CSX because the engine drawbar was defective in that it could not be manually moved through its full range of motion necessary to allow automatic coupling. Further, the defect in the engine drawbar was unsafe. Plaintiff argues that the defective drawbar violates the duties imposed by the FLIA, and the CFR provisions, to furnish plaintiff with an engine that is safe to operate without unnecessary danger of personal injury and is free of conditions that endanger the crew. Likewise, the defective drawbar prevented the engine from automatically coupling, in violation of the FSAA.

An appliance may be shown to be defective by either of two methods: "'Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner.'" *Richards,* 330 F.3d at 432 (citations omitted). The *Richards* court elaborated:

> "Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate." If the plaintiff demonstrates a defect using the second method, he or she need not show an actual break or visible defect. If the plaintiff establishes that the appliance functioned inefficiently at the relevant time, it is irrelevant that the appliance worked efficiently both before and after the occasion.

*Id.* (quoting *Myers v. Reading Co.,* 331 U.S. 477, 483 (1947) (internal citations omitted)).

The Court is persuaded that a full presentation of the evidence is unnecessary in order to evaluate the liability of CSX under the above standards and the factual circumstances presented. It is undisputed that plaintiff and Kloostra made repeated attempts to couple engine 2669 and the gondola car. Although the gondola car was on a curved section of track, it appeared to Kloostra that the drawbars were aligned and the knuckles were fully open, so that the cars would couple on impact. After two failed attempts to automatically couple the cars, Kloostra attempted to move the

13

engine drawbar to the center to accomplish the necessary alignment, but he could not move the drawbar the distance required. Kloostra stated that he was able to move the drawbar only four to five inches toward the center, although it appeared that the drawbar had room to move farther in the housing. Plaintiff then attempted to move the engine drawbar; her knee buckled, resulting in her injury.

"[T]he simple fact that a misaligned drawbar has prevented cars from coupling does not in and of itself establish SAA liability, but that liability will be imposed if some specific evidence of malfunctioning equipment is shown to be the direct cause of an employee's injuries sustained while manually aligning the drawbars." *Ehmann,* 241 F.3d at 794 (citing *Norfolk and Western Ry. Co. v. Hiles,* 516 U.S. 400, 412-413 (1996)). In this case, the latter circumstance applies. The evidence establishes that the misalignment was caused by defective equipment.

First, the evidence is undisputed that the engine drawbar could not be moved manually to accomplish coupling on impact due to a defect or malfunction. Both plaintiff's and Kloostra's testimony establishes that the drawbar could not be moved by either of them to the extent necessary to align the couplers, even though the drawbar housing would have permitted further movement. Plaintiff testified in her deposition that she and Kloostra made two attempts to couple the engine and the gondola car, and both attempts failed, even though it appeared that the drawbars were properly aligned and the knuckles were open (Pl. Dep. 54-58). On the third attempt, Kloostra attempted to move the drawbar to realign it for coupling, and it looked like there was room in the drawbar to do that, but it moved only a little or not at all (*id.* at 59). Kloostra tried to move the drawbar, but could not (*id.* at 60-61). When plaintiff was injured, she was attempting to move the drawbar using a special technique as trained, and she was unable to move it (*id.* at 61).

14

Kloostra likewise provided definitive testimony that the drawbar could not be moved to the extent necessary to align the couplers, despite room in the housing to move further. Kloostra testified that two attempts were made to couple the locomotive and the gondola, and the coupling failed each time even though the couplers appeared to be properly aligned and the knuckles were open (Kloostra Dep. 16-18). Kloostra testified that he was unable to move the drawbar enough to align the couplers and that he pushed only to the point of resistance because rail employees are trained not to use brute force (Kloostra Dep. 19-20). Kloostra's specific testimony was that he could move the engine drawbar only four to five inches (Kloostra Dep. 18-21). There is no testimony or other evidence that refutes the testimony of plaintiff and Kloostra that they were unable to manually move the drawbar.

In addition to plaintiff's and Kloostra's undisputed testimony that the drawbar could not be manually moved as intended, a post-accident inspection of the drawbar by CSX also established that it could not be fully moved manually but would move with the assistance of a knucklemate. Frank Paltelki, a CSX machinist, inspected the engine drawbar at the request of trainmaster Workman after plaintiff was injured (Paltelki Dep. 7). Paltelki testified that he "lifted the drawbar, moved it a little bit, and I told the trainmaster that it was hard, I did not recommend anybody trying to lift it by hand" (*id.* at 8). Paltelki did not think anyone should move the drawbar by hand because it was easier with a tool (*id.* at 16). Further, he had a hard time moving the drawbar, could not move it by hand all the way, and could not move it side-to-side very much at all using reasonable force (*id.* at 17). He could not move it to its limits by hand, but with the tool, it went all the way (*id.*).[10] Paltelki's experience

---

[10] At oral argument, plaintiff pointed out that although defendants contend that the drawbar could be moved with a knucklemate, the applicable standard, which has been in place for decades, is based on manual movement of the drawbar and, in fact, the knucklemate was invented and

with the drawbar was confirmed by Grupa, who agreed that the drawbar was very hard to move by hand but could effectively be moved with the aid of a knucklemate (Grupa Dep.16, Pl. Ex. G).

CSX points to no persuasive testimony or evidence that undermines a conclusion, based on the preceding testimony and evidence, that Kloostra and plaintiff were unable to move the drawbar because it was defective in that it failed to perform as intended. CSX asserts that the fact that Kloostra admitted that he did not push as hard as he could have on the drawbar *suggests* that more lateral movement may have been available in the drawbar. This is hardly a tenable position in the face of strong evidence to the contrary.

CSX also argues that because Kloostra was eventually able to successfully couple the engine and the gondola car, the conclusion that the drawbar was defective is suspect. Also, plaintiff did not attempt to move the drawbar at any time before the time that she was allegedly injured. However, if a plaintiff establishes that equipment functioned inefficiently at the time in question, it is irrelevant that the appliance worked efficiently before or after the occasion. *Richards,* 330 F.3d at 432.

CSX also relies on the fact that the parties' experts reached conflicting conclusions regarding the drawbar. Although the expert opinions are contradictory with respect to whether the drawbar was defective or failed to operate properly or as intended, any difference does not result in a triable issue concerning liability.

Plaintiff's expert, Michael J. O'Brien, concluded that the engine 2669 coupler was defective, and that the federal safety statutes and regulations were violated (Pl. Ex. I, O'Brien Aff. ¶¶ 5, 7; O'Brien Op. 12-13). O'Brien stated in his report that "[a] coupler that cannot be moved laterally

---

generally placed in use only a little over ten years ago. It is undisputed plaintiff and Kloostra did not have a knucklemate at the time of attempted coupling.

to accomplish routine coupling operations clearly violates FRA safety provisions" (O'Brien Rep. at 3, Pl. Ex. I). Further, the "[a]djustment of couplers/drawbars is recognized as a routine and predictable part of railroading" (*id.*). O'Brien noted that "[w]hen couplers are aligned vertically and laterally with one or both knuckles in the open position, federal regulations require that they couple automatically on impact," which did not happen in this case (*id.*). Additionally, a drawbar is an appurtenance that must be in proper condition and safe to operate without unnecessary danger of personal injury, and that engine 2669 did not comply with this basic safety tenet (*id.* at 5). O'Brien's report is further evidence that the engine drawbar was defective and failed to properly perform, as testified by plaintiff, Kloostra, and Paltelki.

CSX contends that its expert, Foster J. Peterson, concluded to the contrary that even if the engine coupler was "hard" to move, the testimony established that it did move and that coupling did occur with various cars when the couplers were properly aligned (CSX Ex. D, Peterson Op. p. 5). CSX asserts that Peterson opined that the drawbar was not defective and not in violation of the FLIA and, therefore, there is a question of fact whether the drawbars were properly aligned given the curve on which the gondola car was located. CSX concludes that the inability to move the drawbar may have been a function of the manner in which the operator attempted to move it or the result of an "alignment control safety device" on the engine coupler. CSX also relies on Peterson's report to contend that the curvature of the track may have been a factor in the failure to automatically couple due to misalignment of the couplers. These arguments effectively disregard that the evidence clearly establishes that the drawbar *could not be moved* as necessary to accomplish alignment.

Kloostra's specific testimony was that he could move the engine drawbar only four to five inches, which was insufficient to accomplish coupling (Kloostra Dep. 18-21). Peterson opines that

17

"[i]t is *possible* that part of the side-to-side travel that Mr. Kloostra expected [in the drawbar] was in fact restricted by the alignment control feature of the locomotive coupler" (Peterson Rep. p. 4, CSX Ex. D) (emphasis added). A mere *possibility* that an alignment control coupler could account for the lack of movement in the drawbar is insufficient to withstand plaintiff's motion for summary judgment given the specific evidence. According to Peterson, with the alignment control coupler, the drawbar side-to-side travel should be no more than eight inches (Peterson Rep. 4). This evidence, taken together with Kloostra's testimony that he could move the drawbar only four to five inches, indicates that the drawbar should have moved approximately three to four inches further, but did not. Thus despite Peterson's opinion, the evidence supports plaintiff's claim that the engine drawbar was capable of moving less than five inches when it should have moved several inches more, and the additional movement of three or four inches was crucial to the automatic coupling of the engine and gondola car.

In this case, whether CSX violated statutory and regulatory safety provisions can be decided as a matter of law. The analyses in *Ehmann* and *Kavorkian* are instructive on this point. Both decisions state the framework for proving liability under the FSAA with regard to coupling as follows:

> [A]t least in a case where coupling had been attempted, the plaintiff proves his claim under [the FSAA] by demonstrating (1) that the train couplers failed to couple automatically or failed to remain coupled until purposely released, and (2) that this failure caused, in whole or in part, the plaintiff's injury. A defendant may rebut the plaintiff's case by proving both (1) that the equipment was not properly set, e.g., that the drawbars were not properly aligned or that one of the knuckles was not open, and (2) that a defect in the equipment did not cause the equipment to be improperly set, i.e., the equipment became improperly set during the ordinary course of railroad operations.

*Ehmann*, 241 F.3d at 795 (quoting *Kavorkian*, 117 F.3d at 958).

Plaintiff has presented conclusive evidence to establish that the drawbar was defective, based on its lack of lateral movement, which was insufficient to accomplish coupling. The evidence establishes that the engine drawbar failed to perform as intended and that this failure caused, in whole or in part, plaintiff's injury. In response, CSX offers only speculation that the drawbars were not properly aligned and that a defect did not cause the equipment to be improperly set. Even viewing the evidence in the light most favorable to CSX, as the Court is bound to do, *Nickels,* 560 F.3d at 429, CSX has not presented sufficient evidence to rebut plaintiff's proof of her claim, to withstand plaintiff's motion for partial summary judgment.

Plaintiff has met her burden, in that "the record contains evidence satisfying the burden of persuasion," and "the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett,* 281 F.3d at 561. Plaintiff is therefore entitled to partial summary judgment on the issue of liability as to CSX.

## VII. Conclusion

Plaintiff's motion for partial summary judgment against NSRC is DENIED. Plaintiff's motion for partial summary judgment against CSX is GRANTED. An Order consistent with this Opinion will be entered.


DATED: December 21, 2009 /s/ Janet T. Neff
JANET T. NEFF
United States District Judge